May it please the Court, my name is Kristen DePhilip and I represent the appellant, Pharmaceutical Care Management Association, PCMA. I would like to reserve three minutes of my time for rebuttal and to address the argument of the United States in this matter. Your Honors, I'd like to cover four points. First, as the United States agrees, the Oklahoma's Patients' Right to Pharmacy Choice Act restricts and eliminates ERISA plans provider network design choices and therefore has an impermissible connection with ERISA. Second, the Supreme Court's decision in Rutledge v. PCMA does not change the analysis that supports a finding of preemption here. Third, I will touch on the Saving and Demer Clause arguments which were waived by Oklahoma, should only be addressed on remand, but I will address them due to the radical nature of the United States position in its amicus. And fourth, I will describe why the Court should adopt a clearly articulated field preemption standard for Part D. Provider networks are a fundamental part, perhaps the most fundamental part of health benefit design. Networks are the primary means for health plans to determine and convey to beneficiaries where and upon what conditions they can receive care using their coverage. The Supreme Court has long recognized that employers sponsoring health benefits have large leeway to design plans as they see fit. So laws that prohibit employers from structuring their employee benefit plans in a particular manner or require them to adopt a certain particular scheme of substantive coverage are preempted. And this principle dates back more than 25 years to Shaw v. Delta Airlines, and it has been reinforced by numerous cases throughout the decades, including in the Rutledge decision in 2020. Here the Act dictates the size, composition, and terms for participation for provider network. And it's the Pharmacy Network in this case. Counsel, is your argument entirely based on the Act's plan administration impact? Is that where you're... Because I was a little bit confused in your brief, you seem to draw a distinction between plan design and plan administration. Is that a distinction that I'm incorrectly picking up on? No, that is a distinction, but I think that it meets both of those categories of preemption. So the connection with test has been articulated in numerous different ways over the almost 50 years that it's been adopted. The primary reason why the Act is preempted is because it dictates substantive plan design. And that is a connection with test that, as I just noted, started with Shaw and has carried through throughout Rutledge. The other way of framing preemption and connection with is whether a law impacts central matters of plan administration. And the courts haven't necessarily sort of distinguished between central matters of plan administration and substantive plan design. They sometimes use them interchangeably and they sometimes speak about them separately. The Act also does impact central matters of plan administration, that central matter being the design, maintenance, and implementation of the Pharmacy Network. It requires PBMs and plans to adopt open preferred networks. They have to rely on brick and mortar pharmacies. And this precludes plans from adopting common benefit structures, including limited preferred networks, so preferred networks with only a few pharmacies in them, and exclusive mail order networks, which also would include exclusive specialty pharmacy networks. The Act also requires cost sharing to be structured to equally incentivize the use of mail order and retail pharmacies. It eliminates a common cost sharing structure that is deployed by plans to make mail order cheaper for beneficiaries. And it also prohibits the use of common terms and conditions that are used to ensure beneficiary safety. Each of these four challenged provisions impose on network design, but I'd like to just make a note on the probation-based pharmacy limitation prohibition. The federal government positions this provision as not very intrusive, but it is actually perhaps the most intrusive provision of the four. Should we be concerned about de minimis effects at all? I mean, is that how we should be looking at this, or is this, are we supposed to be asking different questions here? It is a different question, Your Honor. There is no de minimis test. When you're looking at a law that impacts plan design, it's an on or off switch. If the law impacts substantive benefit design, as it does here, then it has a connection with ERISA. And if it doesn't, it may also impact central matters of plan administration. There may be some other way it has a connection, but there's no de minimis examination when it comes to looking at laws that have an impact on substantive benefit design. There is potentially a de minimis impact when you're looking at indirect economic impact, so that's a dicta from the traveler's case. That may be where the de minimis exception idea comes from, but it does not apply, hasn't been applied by the Supreme Court in any of the benefit design cases. What about WEBE, though? WEBE is not miscited. Are you just saying that it's misdecided? So this case is different from WEBE. I think WEBE didn't involve network design for the most part, and so I know there was some language about looking at de minimis impacts in WEBE. That was looking at those very exact indirect economic impacts and sort of weighing whether or not they might meet the exceptions set forth in the dicta in travelers. Well, if we followed WEBE, would you lose on that point? If we followed WEBE? If you followed WEBE? No. WEBE was looking at a very, very different set of provisions. It didn't look at any provisions that had network design implications, and so... I have to say respectfully, that answer doesn't satisfy me, because it seems that WEBE dealt with accreditation regulations and the probation-based provision deals with licensure, and those seem similar to me. How are they not similar? So they are different. So here the Act says that you can't use a probation status to exclude a pharmacy from the network. In WEBE, perhaps that is a different flavor of the same question, asking whether or not you can impose an accreditation standard on a network, two different provisions. But I think the more serious question is whether, if this case were to find that there was no network, there's a number of other cases that have found that network design restrictions in fact are preempted. And that goes to Miller, it also goes to the Fourth and Fifth Circuit and the Stewart Circle Hospital case, and signify Louisiana. So it seems that you keep talking about the plan design, the Act's plan design impact. So that seems to suggest that we're supposed to be looking at these provisions in tandem, not individually, or, I mean, I'm curious why that's coming up in your answer and it's not directly focused on what the probation-based pharmacy limitation requires. So each of the provisions does separately impact plan design. If you're focusing on the probation-based pharmacy limitation, it impacts the terms and conditions of joining the network. I think the network is one of probably three key elements of the benefit design, one being what drugs are covered, another one being what cost-sharing model is applied. But what the network is and what the conditions are for participation in the network are certainly part of plan benefit design, independently of the other three provisions. They do also operate together to further restrict plans and their benefit designs, but each of them independently eliminates choices for plans. As far as the district court's ruling and its use of the word force, whether the plan is forced to do something, and let me ask you this question. If we said that all of the provisions at issue are preempted, do the PBMs still have to comply with the Oklahoma Act for non-ERISA and non-Medicare Part D pharmacy networks? Yes, they do, and that's a great point because the state raises this factor that if you hold in favor of PCMA in this case, that somehow the state would have no ability to regulate PBMs. That's simply not true. The state can regulate non-ERISA, PBMs serving non-ERISA plans and PBMs serving non-Medicare Part D plans, so commercial plans, Medicaid plans, without regard to the principles at issue in this case. And they can also serve certain segments of the fully insured ERISA market. In addition, this particular act had, I think, 12 subsections to it and multiple sub-subsections and we're only challenging four provisions of the act. What does that do to your argument about nationally uniformed plan administration? Sounds like it's going to be random anyway. Well, it's not going to be random when it comes to benefit design because the four challenged provisions are the ones that really impact benefit design. The act has other provisions that go to things like claims processing and fees that are charged to pharmacies or the ways that the pharmacies are paid. Those are a lot more similar to the PBM law that was at issue in Rutledge and are not on appeal here. So I would like to turn to Rutledge, if that's okay. I have two points to make regarding Rutledge. First, that case dealt with the narrow question of whether a rate regulation was preempted. It did not change the prevailing standard that renders laws impeding benefit design preempted. And second, Rutledge was not a referendum on PBM laws and nor should this case be. So on the first point, the Arkansas drug pricing law that was at issue in Rutledge required PBMs to pay pharmacies a particular price. And by doing so, it did not dictate or restrict benefit design. It was not like the laws that were at issue in the Shaw case, the MetLife case, the Egelhoff case or the Miller case. Rather, it was much more like the taxes or the rate regulations that were at issue in De Bono and Travelers. And the law here is fundamentally different. We've already discussed how it impacts benefit design. On the second point, Oklahoma has attempted to position this case and Rutledge both as business practices. This mischaracterizes the reasoning of Rutledge, and it also relies on assertions that are just not relevant to the preemption analysis. Not a single case, including Rutledge, has disposed of the connection with question based solely on whether the law was addressed to a health plan or some other party. Nor did Rutledge decide the question of arrest of preemption as applied to all PBMs. And it could have done so by holding that the law was not preempted just because it was directed to PBMs. But it did not. It looked at how the law operated, and that is what this court should do too. And it's just also important to note that PBMs form, maintain, and administer pharmacy networks, the very subject matter of this act. And in doing so, they're just like the other third party administrators that plans used to administer other aspects of the health benefit. For a company or a union that funds its own prescription benefit, a self-funded plan to pharmacy benefits without a PBM, it would need to take on an entirely new line of business to do that. And almost no employer or union is equipped to do so, and almost none do so. So this is why the laws in position on PBM pharmacy network design imposes equally on a risk of plan pharmacy network design. And one last point on the PBM referendum, Oklahoma's arguments rely mostly on invective and policy arguments against PBMs. Those are not relevant to whether the act restricts benefit design, and they are also misleading. Many of the PBM practices that are described in the briefs are not addressed by the act at all. I'd like to touch briefly on two more points, the saving and demer clauses. So first, the savings clause, the saving clause is only implicated if the court finds a connection with ERISA, and the demer clause is only implicated if the saving clause applies. And neither of those clauses are properly before this court. Oklahoma waived its argument that the saving clause applied to the act. It didn't raise it in its motion for summary judgment at the district court. It only mentioned it briefly in a footnote to its brief, and it's never addressed the demer clause at all, neither before nor after the United States raised the demer clause in its brief. So the proper issue before this court is the connection with issue, and it can and should resolve the case without considering the saving or demer clause. One last note, that the federal government's position on the demer clause, that the saving clause applies to the act's regulation of PBMs, but the demer clause only applies to the act's direct application to self-funded plans, that is just radically incorrect. It ignores the interplay between the saving and demer clause. It is counter to all ERISA precedent, and it would essentially eliminate the concept of ERISA preemption, because it would deprive the vast majority of plans that use third party preemptions protection. Counsel, to your knowledge, is this the first time that that type of argument has been advanced in this kind of litigation? It's the first time I have seen it advanced in this litigation. Well, actually, that's not true. There are other cases. There are circuit court cases that have considered the question. I'm not sure exactly how it was advanced. I've read the decisions, and they've all rejected the position. So the Third, Fourth, I think Eighth and Eleventh Circuit have all rejected this position already and said that third party laws applied to third party administrators can be preempted and have the same connection with and are saved by the demer or helped with the demer clause. I would like to just briefly address Medicare Part D preemption. The federal government agrees with PCMA that the annual willing provider provision is preempted, and that would be the case under any standard, but we would encourage the court to adopt a field preemption standard for Part D, which is a federally funded program created by Congress governed by rules from CMS. States obviously have a renewed interest in regulating in this space, and the court should act to protect this federal program by adopting a clear and cogent field preemption standard like that the First Circuit adopted in Hernandez. And I will reserve the rest of my time. Thank you. Judge Murphy, did you have any questions? I have no questions. Thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Zach West, and I represent the Oklahoma Insurance Department and Oklahoma Insurance Commissioner Glenn Mulready. Although a risk to the Medicare Part D can be dense in complex areas of law, this case is relatively simple. Oklahoma's Pharmacy Choice Act, which was passed unanimously on a bipartisan basis, is not preempted by ERISA for three basic reasons. First, because PBMs are not health plans, rather they are independent, for-profit entities that are not fiduciaries, and the Supreme Court in Rutledge held could be held accountable for their own actions. Second, because the Act does not regulate in traditional areas of ERISA, the ERISA acts, such as fiduciary duties, reporting, and disclosure. And third, because the Act does not require health plans, by regulating PBMs, does not require health plans to take any specific action in relation to any beneficiary or any benefit as Rutledge indicated is also required. Alternatively, the State Insurance Department and the State Insurance Commissioner agree with the federal government that a law that's in the state's insurance code does indeed regulate insurance and would be protected under the Savings Clause. And then finally, Medicare Part D does not preempt Oklahoma's Any Willing Provider provision as the District Court held, because there is no on-point standard for preferred pharmacies, and to accept the federal government's view that a standard that they considered but did not enact or did not pass somehow still preempts Oklahoma's law risks trampling on state authority to regulate in traditional areas of state regulation like pharmacies. Why hasn't Oklahoma waived the Savings Clause argument? First and foremost, because it is not our burden to bring up the Savings Clause argument in the first place, as we argued in our supplemental brief. The preemption and then the Savings Clause are part and parcel of the same discussion. And ergo, it is PCMA's burden from the get-go here to prove preemption, and you don't get to preemption without analyzing the Savings Clause. And PCMA from the get-go in their complaint did not bring up the Savings Clause, did not argue it. We did. We actually, we had debates about this, like, well, they didn't bring it up, should we? So we did in a lengthy footnote, both at the preliminary injunction stage and at the summary judgment stage and in our opening brief on appeal, we argued in a lengthy footnote that didn't just, wasn't perfunctory, didn't just touch on the surface level of the Savings Clause, but laid out basically the analysis for why we should prevail under the Savings Clause. So you addressed it on the merits, but your position is you didn't have to address it because it wasn't your burden? Yeah, that's our first, yes, that's our first point, is we, it wasn't actually our burden in the first place. It's, it's, PCMA's burden to prove that state laws are preemptive, and that's a high standard. And that it is simply our... Do you, do you, counsel, do you have any Tenth Circuit precedent you can point out to us that indicates this burden of proof theory that, that gets you around labor? It seems to me that, that, that it was your responsibility to raise it beyond a footnote in the event that you, you lose the preemption theory. Then you fall back to position as the Savings Clause. I don't have a specific Tenth Circuit... Oh, sorry, Your Honor. No, no, no. Do you have any authority from the Tenth Circuit that adopts this burden of proof theory that From the Tenth Circuit... Do you have any Tenth Circuit cases? From the Tenth Circuit, no, although I would point out, I believe it was in the Wiebe decision in the Eighth Circuit that made it clear that PCMA bears the burden here of proving preemption, and we think that's a fairly uncontroversial position. Well, well, well, quite aside from who bears the burden, the fact that somebody else bears the burden, I want some case law that indicates that that somehow absolves you from raising an alternative way of prevailing should you lose on preemption. I don't have a specific case that would state it in this specific context in terms of ERISA saying that the two prongs of ERISA that a party can... In any context, talking about burden of proof, do you have a case? I don't believe so, although I would go back to your second point that in the Bimbo Bakery's case, I think that PCMA cites that you had mentioned, oh, you just preserved this in a footnote. The Bimbo Bakery's case does not stand for the proposition that anything in a footnote is waived. It simply says that a perfunctory analysis is waived, and a perfunctory analysis is simply not an accurate description of the footnotes here because they are single-spaced and take up over a half a page or around a half a page each, which would be several pages in the main text. It's not a perfunctory analysis. Sure. It's not in-depth in the sense of the rest of the argument because obviously our argument from the beginning is... Well, let me ask this. Did you mention the same flaws in your responsive brief to the appellant's opening brief? Yes, yes. The same, similar footnote. We kind of obviously edited it further, but the same lengthy footnote is... In response to the government? I'm not sure I followed that. We raised it at the preliminary injunction stage in response to the government, at the summary judgment stage in response to the government, and in our opening brief on appeal in response... Not to the government, sorry. In response to PCMA at each of the three stages, we filed the same lengthy footnote explaining why that even if we are incorrect about the connection with preemption, that the savings clause would apply. Okay. Appreciate it. To go back to the first point that PBMs are not health plans, 34 states and Washington, D.C. have joined together in amicus brief in this case arguing that Oklahoma's Pharmacy Choice Act does not have a connection with preemption. That includes, in addition to Minnesota, Texas, Florida, California, New York, and getting those states to agree on pretty much anything is nearly a possibility, but they're here together. Why is that? Is it because they just want to pick on health plans? Or is it because what is reality is they recognize that PBMs are definitely open to regulation and should be regulated and have practices that are potentially harming and are harming consumers in their states? Counsel, but it seems like the premise of your argument is that PBMs are not health plans. I mean, if that's true, wouldn't Rutledge have been decided much more simply? Well, Your Honor, we would argue that Rutledge was decided fairly simply. Rutledge was not a lengthy decision. Rutledge walked through the steps at the end of it, as we've pointed out. Rutledge explicitly addressed this contention that, oh, that you're affecting a central matter of plan administration. What Rutledge explicitly said was PBMs can be held responsible for their own actions. That was almost one of the concluding major paragraphs of Rutledge, which was, again, a fairly short decision. They said, yeah, one of the major reasons we're going this direction is because PBMs are simply, it's their responsibility, and that was in regard to an Arkansas provision that was fairly drastic. The Arkansas provision said that pharmacies can decline to provide a benefit. They can decline to provide a benefit if they're getting an underwater reimbursement, basically saying they can pull themselves out of the beneficiary process. And PCMA said, oh, that's drastic. That's got to be regulated by ERISA. That has to be, that you're affecting directly benefits. And the U.S. Supreme Court's response for it was explicit, that PBMs can be held responsible for their independent actions. And that's what Weeby actually picked up on. Weeby does start off with a statement that PBMs, that regulations of PBMs are basically regulations of health plans, which we would disagree with. But then Weeby gets down into its analysis and actually quotes that paragraph from Rutledge and says, PBMs can be held, actually, Weeby adds the word independent and says they can be held to account for their own independent decisions. And as a result, in Weeby, the Eighth Circuit, despite starting off by saying that the health plans and PBMs are more or less interchangeable, ends up in a place where it says, but we don't think any of these provisions are regulated because PBMs are independent and can be held accountable for their own decisions. So you think that Rutledge actually adopted the construction that you are contending is correct, right? Is that your position? Implicitly, yes. It obviously did not explicitly say PBMs are not health plans. But throughout the opinion, I mean, it starts off by talking about how PBMs are for-profit entities who make profits apart from health plans. So it sets it up with its factual scenario in embracing that idea. And then it goes down, again, to hold that PBMs can be independently held accountable for their own positions. And then it's standard. Basically it says you have to, in order for this scenario, for a law to be preempted, that you have to regulate or force plans to do something. So somehow through your PBM regulation, you've got to be forcing plans to make a specific decision for this to be regulated. And we think the best interpretation of that is just to simply say what they're saying is, well, okay, to the extent we're going to find somewhere, somehow, a PBM law in the future to be preempted, it has to fit this pretty drastic, it has to basically be a direct regulation of the plan through the PBM. That's my problem with your argument, and maybe you can help me with it, is that all of this PBMs equal plan stuff goes so far. What we're talking about is in connection with the plan, or connected with the plan. And here's my problem, is that in view of the Oklahoma law, if it's upheld, the plan has fewer options, the insurer has fewer options on what its plan can say and do. And that by itself is preempted, is it not? We would disagree, Your Honor. That idea that if you're taking plans down to options, say from 100 options to 99 or 90 options, that that just automatically means something is preempted, that concept is just nowhere to be found in Rutledge. And it is a concept, as again, 35 states are here representing, that would devastate their chances and ability to regulate in a traditional area of state regulation of pharmacies. If you're taking any time, you like to go from 100 to 99, that that means it's preempted. That would, I think, cause Rutledge to come out the other way. We're not talking costs. Rutledge goes so far. We're talking about design and structure of plans. And that's a different ballgame. And if you or another state wants to essentially design and structure the plan yourself, that's preempted, is it not? Because don't we then lose our uniformity? Every state's different. All of the burdens and administrative nightmares follow. The very reason we have preemption here. Your Honor, I do not believe that the state, at least what the state has done here, which is to restrict options in some small way while not taking design upon themselves entirely, is preempted. Again, because that language is not found in Rutledge. It's not found in any of the recent Supreme Court decisions. They have to go all the way back to Shaw from 1983, which the Supreme Court itself has criticized as being not clear on anything. The New York, the Traveler's decision in 1995 in referencing Shaw basically said Shaw just wasn't helpful. And if it wasn't helpful in 1995, 28 years ago, I don't see, we don't see how it's helpful now to take this 100 to 99 scenario of preemption and somehow read Rutledge, which doesn't mention that at all and seems to indicate you have to force a specific choice, that that analysis is still valid given the unanimous Rutledge decision. And I would note one thing. If you go to page 482 of Rutledge, Rutledge did briefly discuss plan design. On page 482, it says PCMA first claims that Act 900 affects plan design by mandating a particular pricing methodology for pharmacy benefits, very similar to the argument made here. And then you scoot down a little bit and they say, but that argument is really just a long way of saying that Act 900 regulates reimbursement rates. Requiring PBMs to reimburse pharmacies at or above their acquisition cost does not require plans to provide any particular benefit to any particular beneficiary in any particular way. So in Rutledge, they addressed a specific plan design argument and said, I think you're just rephrasing things to make it sound like something worse than it is. And if you're not showing that a particular benefit is required to be provided to a particular beneficiary in a particular way, that it's just not preemptive. Rutledge is- But it does- Oh, yes, sir. It does effectively, the provisions in the Oklahoma Act do require that type of design effect by saying you shall provide whatever benefits you have in this fashion. You must give it to all willing pharmacies. You must allow them to go anywhere.  It's a way of delivering a product. It's a way of delivering a product, Your Honor, but again, Rutledge just doesn't give credence to those types of kind of rephrasing the question arguments because almost anything can be phrased as- The quote you just had indicated that Rutledge suggested that it's a design feature if it affects the way that the benefit is provided. And in this case, the way the benefit is provided is seriously affected by, for example, the all willing pharmacies provision. Your Honor, we would disagree. It says that it does not require plans to provide any particular benefit to any particular beneficiary in any particular way, and that seems to imply that, kind of like the eagle- That's my point, in any particular way. It does require, in a particular way, that any willing pharmacy has to be eligible, correct? No, it does not require a particular way. That is just a structure for benefits more broadly. The word particular would mean like a single way. It's like a design structure, correct? It is. It is a network design structure, which is not a central matter of plan administration. It's optional for plans. But a network design structure is not a core issue that ERISA has addressed, nor is it a core issue even to plan design, nor does it require a particular specific benefit like we see- Your Honor, I apologize. May I finish my answer? I realize I'm over time. Yes, you're responding. Nor does it require, like maybe the Eagle Hoff case is probably the best example we can think of, which is they said your particular benefit is- The state law says it goes to relatives and family. The plan says this particular benefit goes to the ex-wife, and they said that's preempted because that's a particular benefit that's, in a particular instance, a person that's going a particular way. We don't even have any health plans here that are litigating about any of their specific plans or particular designs. Your Honors, for all these reasons and more, we respectfully ask that you affirm the district court. Thank you. May it please the Court, Ben Snyder on behalf of the United States. I'm here to be helpful. I'm happy to address whatever the Court would like, but if there's nothing you want me to start with, I'll start with the ERISA question, first addressing our disagreements with Oklahoma on the connection with standard, and then our disagreement with PCMA on the Deamer Clause. On the connection with standard, Oklahoma argues that its law can't have a connection with ERISA plans because it affects plans only indirectly through PBMs, but the express preemption clause doesn't have a directness requirement. In the Metropolitan Life and Rush Prudential decisions, for example, the Supreme Court held that state laws that regulated insurance companies or HMOs had a connection with ERISA plans because they bore, quote, indirectly but substantially on the ERISA plans that chose to contract with those third parties. The same is true here. Three of the four challenge provisions bear indirectly but substantially on central matters of plan administration. Only the probation provision lacks the relevant connection because it doesn't address central matters of plan administration, either directly or indirectly. Oklahoma separately argues that after Rutledge, a law has a connection with ERISA plans only if it requires plans to adopt a specific choice. You heard that just now. Not when it makes certain choices off-limits. On that view, Oklahoma could require plans to provide either Benefit 1 or Benefit 2, and that would be fine because the plan still has a choice. And respectfully, that's just not a plausible reading of Rutledge, and it would directly contradict multiple Supreme Court decisions. In FMC, for example, the law just prohibited ERISA plans from using subrogation clauses. Under Oklahoma's approach, that wouldn't implicate ERISA at all because it doesn't require any particular benefit. But the Supreme Court held that the Pennsylvania law had a connection with ERISA plans because it affected how they could be structured. My friend mentioned Shaw. That's another case that falls into this bucket. I don't think there's any basis for concluding that the Supreme Court has silently overruled Shaw, and his implicit concession that Shaw is inconsistent with his position here I think should make it pretty easy to resolve that part of his argument. And we think that the three provisions we've identified here do the same thing. They constrain particular benefit design choices that would otherwise be available to plans. Counsel, how does the logic that yields preemption for three not yield preemption for the probation-based pharmacy prohibition? So we think the relevant question is whether the probation provision goes to a central matter of plan administration. We don't think that it does. My friend from PCMA has said that it's not appropriate to look at sort of how significant an effect a particular law has on plans' decision making. And respectfully, I don't think you can square that with the idea that the test is whether it is a central matter of plan administration. That necessarily bakes in the sort of question of how important it is. So the United States agrees that the probation-based provision does affect plan administration, but your focus is it has to be central, and this is not central enough. So that's correct. I'd point you to footnote 21 in the Supreme Court's Shaw decision. It says that some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law replaces to the plan. We think that's what's at issue here. I think it's important that the probation provision does not require PBMs to include any particular pharmacy in their network. All it does is identify one basis on which PBMs cannot exclude that pharmacy, and even more importantly, that one basis is a decision of the Oklahoma Pharmacy Board. All they're saying is you can't use the pharmacy board's own probation decision as a basis for excluding these pharmacies. If you want to send your health inspectors to the pharmacy and decide to exclude them on that basis, this provision doesn't exclude that. It's just the use they can make of a decision that the pharmacy board could choose to just keep private. So we think that's the sort of thing that is peripheral to plan administration. It's not central to plan administration, and that's why we choose it. Let me ask this. Isn't your position that it's non-central or de minimis, isn't that a factual question? What if you had a state where it was a prolific consequence that pharmacists on probation were all over the system of pharmacies? Then it becomes more central to the plan design, doesn't it? Respectfully, Judge Murphy, I disagree. I think it would still, the specific provision would still be non-central, would still be peripheral, because this law doesn't prohibit PBMs from going to those pharmacies and saying, you know, and potentially even, Oklahoma would know this better than I would, but potentially even looking at pharmacies that have been placed on probation and singling those out for inspections. I'm not sure what Oklahoma would say on that. But if a PBM wants to send inspectors and identify those sorts of health concerns, it can do that. All this does is say, you can't use the Oklahoma Board of Pharmacy's decision as a basis for excluding the plans. And there, another thing that I think is relevant is that one of ERISA's primary concerns is maintaining national uniformity. And by definition, a provision that concerns only the decisions of the Oklahoma Pharmacy Board is not going to interfere with nationwide uniformity. The decisions of the Oklahoma Pharmacy Board are not going to interfere with PBMs' networks in other states because, by definition, they don't affect pharmacies in those other states. As I understand the de minimis rule, it's been applied to indirect economic effects. But I haven't seen it uplifted to benefit design. Are you saying that Shaw does that in that footnote? Or are you saying that we should extend the law? No, I'm not saying that Shaw does that in that footnote. I'm saying that that footnote acknowledges the possibility. And I think the place that this comes from is the test itself, whether it is central to plan administration. If something is just peripheral and only has a de minimis effect, I don't think that it's fair to characterize that as central to plan administration. I will say that my understanding, and I'm not sure that this is in the record, and so maybe it's not worth considering, but our understanding of this provision is that only about half a dozen pharmacies or pharmacists are placed on probation from year to year. And so we think that that's sort of icing on the cake and showing why this is not central. As I said to Judge Murphy, our answer would be the same even if it were more significant. But we think that that just confirms this isn't the sort of thing that Congress intended to preempt with ERISA. If I could, I do want to address the Diemer Clause. We have not taken a position on whether that issue is preserved, and I don't mean to suggest that here. But if the court reaches it, we think that the court should hold that all three of the provisions we've identified here are saved as laws regulating insurance. PCMA doesn't dispute that the Savings Clause applies in the context of insured plans, but it argues that the Diemer Clause exempts PBMs working with self-funded plans, and respectfully, that's just not how the Diemer Clause works. As this court explained in Fuller, which PCMA notably doesn't cite, the Diemer Clause says that ERISA plans themselves can't be treated as persons subject to state laws enumerated in the Savings Clause, but the Diemer Clause refers only to ERISA plans and ERISA trusts. It doesn't refer to PBMs or other third parties, and therefore doesn't exempt PBMs from state laws. PCMA... But doesn't that mean that on the self-funded plans, that they are the real insurer? And because of the Diemer Clause, they cannot be deemed insurers for purposes of state law. And since self-funded plans are basically the insurers, they're self-insured, then the pharmacy benefits people are just merely functioning for them, much like an employee or an agent, and not really engaging in the business of insurance. So I don't think that's right. The Supreme Court, in footnote one of the Miller decision, said that... This is not by any means a direct quote, but said that in deciding whether something is an insurance law, you look at whether it targets insurance companies and targets the business of insurance, and the fact that a state law may be somewhat over-inclusive in that doesn't take it out of the Savings Clause. And so here, I don't think there's any dispute. PCMA has not argued that the three provisions we've identified count as insurance laws within the meaning of the Insurance Savings Clause. And then what you do is you go to the Diemer Clause, and the Diemer Clause is not like the Insurance Savings Clause in the sense that the Insurance Savings Clause speaks of laws as a whole. The Diemer Clause speaks about specific entities, and it refers only to ERISA plans and ERISA trusts. It doesn't refer to every third party hired by an ERISA plan or an ERISA trust. If I could, just at the very end, I want to clarify our position. PCMA has suggested that our position would make the Diemer Clause basically meaningless, and that's just not correct. There are lots of cases in which our understanding of the Diemer Clause would lead to the same outcome they do. In the FMC decision, for example, the state law at issue there prohibited subrogation requirements, and that sort of law would be unenforceable against, may I close that thought, would be unenforceable against self-funded plans because it would be the plan itself that would be responsible for including the subrogation clause in its contract or enforcing the clause. The same would be true, I think, with many sorts of mandated benefit laws where the self-funded plan would be the one that would not include the particular benefits required by the state law in question. It's only that the particular provisions here don't cash out in the same way as those cases. Thank you. And, counsel, to keep the time even, we'll give you two minutes and 29 seconds and hold you to it, unless there's a question that carries past. Thank you. I appreciate that. So I will start where the United States left off with the saving and the Diemer Clause, and I will also address Oklahoma's position on the saving clause. Oklahoma has waived its savings clause argument. It mentions its position in passing. The lengthy footnote to which they're citing really doesn't provide an in-depth analysis of why the saving clause should apply, and the district court didn't consider this question because it didn't get to it. So, really, the appropriate place for these issues to be decided would be on remand. The saving and Diemer Clause issues have not been fully briefed by the parties. As I mentioned earlier, Oklahoma never even addressed the Diemer Clause and even its response to the government's brief. Counsel, what of the position of your friend on the other side, that they had no obligation to do that because it was your burden all along? PCMA did not bear the burden of proof to assert the saving clause, and I think it's telling that there were no case citations offered to support that proposition. But I would point you to the Supreme Court, ERISA jurisprudence. There are several cases that hold that a law is preempted without even looking at the saving clause. If it were the plaintiff's burden to prove preemption or the party advancing the preemption argument burden to prove, you would have to go through the entire analysis every single time, and then Gobey and Egelhoff are just two examples of where the saving and Diemer Clause were never even addressed. So what is your position on the remand, that we should remand? Well, our position is that if you believe that there was no waiver, or if you believe that you don't have enough information to determine whether or not there was a waiver, it should be remanded. We do think you can dismiss these arguments out of hand, but all of the briefing in this matter was focused on the connection with Prong. That's at the district court level as well as here, and you can absolutely decide that the law has a connection with ERISA without deciding the saving and Diemer issues. But if you do believe that the saving and Diemer issues need to be decided, I think they should be decided by the district court in the first instance and subject to full adversarial briefing, and they may need further development of the record as well, because these were not issues that were raised below. On the Diemer Clause, as I mentioned, the court doesn't need to decide this issue at all, but it is not an exaggeration to say that a holding consistent with the United States position would severely narrow ERISA preemption in the Tenth Circuit, and as I mentioned earlier, it would also be inconsistent with the Third, Fourth, Eighth, and Eleventh Circuit's decisions when it applies ERISA preemption and the Diemer Clause to third-party administrators. It's just important to note that for the 50 years that ERISA has been in effect, states, insurers, and employers sponsoring benefits have always understood that when it comes to state regulation, the state saving and the Diemer Clauses provide a distinction between fully insured plans and self-funded ERISA plans. Counsel, you need to wrap up, because like I said, I'm trying to keep the time even. Thank you, Your Honor. So in conclusion, we would ask that you reverse the district court's decision, find that the challenge provisions have a connection with ERISA and are preempted by ERISA, and find that the single, any willing provider provision is preempted by Part D.  Okay. Thank you, Counsel, for your arguments. The case is submitted. Counsel are excused. Judge Murphy, we didn't get a chance to speak before, but with your permission, we take a ten-minute break. We'll stand and recess ten minutes. Thank you.